NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WAVEFRONT, LLC, JIE YAO, and<br>FENG SUN,<br><br>Defendants. | Civ. No. 20-5094<br><br>**OPINION** |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion to Dismiss filed by Defendants Wavefront, LLC, Jie Yao, and Feng Sun (collectively, "Defendants"). (ECF No. 13.) Plaintiff United States of America (the "Government") opposes. (ECF No. 15.) The Court has decided the Motion based on the written submissions of the parties and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Defendants' Motion to Dismiss (ECF No. 13) is granted in part and denied in part.

## BACKGROUND

### I.     Factual Background

A.     *SBIR and STTR Programs*

This is a False Claims Act case. The Government alleges that Defendants made material misrepresentations in proposals for government contracts. (Compl. ¶ 1, ECF No. 1.) Federal

1

agencies awarded the contracts under the federal government's Small Business Innovation Research ("SBIR") and Small Business Technology Transfer ("STTR") programs. (*See id.* ¶¶ 51–352.) The SBIR and STTR programs require that certain federal agencies reserve a portion of their research and development ("R&D") efforts for "small business concerns." *See* 15 U.S.C. §§ 638(f)(1), (n)(1). Several federal agencies participate in the SBIR and STTR programs, including the National Aeronautics and Space Administration ("NASA"), the Department of Defense ("DoD"), and the National Science Foundation ("NSF"). (Compl. ¶ 22.) Applicants must meet certain requirements to qualify for SBIR or STTR contracts. For example, applicants must be organized for profit and have no more than 500 employees. *See* 13 C.F.R. §§ 121.105, 121.702(c).

To obtain SBIR or STTR contracts, applicants submit business proposals. (Compl. ¶ 26.)[1] The proposals summarize personnel, research to be conducted, facilities, and equipment. (*Id.* ¶ 27.)[2] The proposals also outline a proposed budget for, among other things, personnel, labor, overhead, materials, equipment, general and administrative costs, fees, or profit for the company. (*Id.* ¶¶ 28, 36.)

A panel of scientists, agency personnel, and subject-matter experts in scientific and engineering fields review the proposals. (*Id.* ¶ 30.) The panel relies on the truth of the information in proposals when awarding the contracts. (*Id.* ¶ 31.) The panel reviews the technical merit of the research, the qualifications of personnel, the facilities, the potential for commercialization, and the proposed budget in each proposal. (*Id.* ¶ 32.)

When a proposal is selected by a government agency, the proposal "typically becomes

---

[1] Paragraph 26 appears twice in the Complaint. This citation refers to the second ¶ 26.
[2] Paragraph 27 appears twice in the Complaint. This citation refers to the second ¶ 27.

incorporated into the contract and is used as the statement of work." (*Id.* ¶ 33.) The proposal forms the basis for the amount awarded under the SBIR or STTR contract, up to certain maximum amounts. (*Id.* ¶ 38.)[3] Ultimately, the recipient of the contract is only entitled to costs actually incurred. (*Id.* ¶ 37.)

      B.    *Defendant Wavefront's Proposals*

Defendant Wavefront was formed in 2010 by Defendants Feng Sun and Jie Yao, the company's Chief Executive Officer and Chief Technology Officer, respectively. (*Id.* ¶¶ 46–49.) The company was formed "for the purpose of obtaining government contracts, including SBIR contracts, and conducting research in an attempt to develop technology." (*Id.* ¶ 50.)

Between January 2011 and January 2015, Defendant Wavefront applied for and was awarded a total of seventeen SBIR and STTR contracts with DoD, NASA, and NSF. (*See id.* ¶¶ 51–352.) Each of these proposals was submitted and certified by either Defendant Sun or Defendant Yao. (*Id.* ¶ 354.) After being awarded the contracts, Defendant Wavefront requested payments from the Government, and the Government remitted payments. (*Id.* ¶¶ 355, 383, 409, 418.)

SBIR and STTR proposals acknowledge that providing false information in proposals may be a crime. DoD proposals state that "[k]nowingly and willfully making any false, fictitious, or fraudulent statements or representations may be a felony under the Federal Criminal False Statement Act[, 18 U.S.C. § 1001]. (Compl. ¶ 41.) NASA proposals state, "I understand that providing false information is a criminal offense under [18 U.S.C. § 1001 and 18 U.S.C. § 287]." (Compl. ¶ 42.)

---

[3] NSF refers to the awards as "grants." (Compl. ¶ 34, ECF No. 1.) NASA and DoD refer to the awards as "contracts." (*Id.*) This Opinion refers to the awards as contracts.

The Government maintains that Defendant Wavefront was awarded the contracts because Defendants' proposals misrepresented information regarding personnel, facilities, and payments for a laboratory membership. (*See id.* ¶¶ 353–407.) Regarding personnel, most of Defendants' proposals listed an individual named Ting Li as "Senior Optoelectronic Engineer." (*Id.* ¶¶ 54, 74, 95, 114, 133, 151, 169, 186, 204, 223, 270, 290, 310.) But Ting Li apparently never worked on any Defendant Wavefront project for which she was named as Key Personnel. (*Id.* ¶¶ 55, 89, 108, 127, 139, 157, 175, 210, 231, 276, 295, 310.) Almost every proposal listed several "Advisors, Consultants, and Subcontractors," including distinguished professors. (*Id.* ¶¶ 59, 76, 97, 116, 135, 153, 171, 188, 206, 225, 244, 272, 292, 317, 329, 344.) But none of the advisors, consultants, or subcontractors listed in the proposals worked on those contracts. (*Id.* ¶¶ 60, 77, 98, 117, 136, 154, 172, 189, 207, 226, 245, 273, 293, 317, 330, 345.) Most of the proposals budgeted for employment of either an optoelectronic engineer or an engineer. (*Id.* ¶¶ 61, 78, 99, 118, 137, 155, 173, 208, 228, 275, 294.) But nobody with the qualifications of an optoelectronic engineer or engineer worked on those projects. (*See id.* ¶¶ 62, 79, 100, 119, 138, 156, 174, 209, 229, 277, 296.) Some of the proposals stated that the company averaged five employees over the previous twelve months. (*Id.* ¶¶ 71, 91, 110, 129, 147, 165, 183.) But Defendant Wavefront's only employees or principals during that time were Defendants Sun and Yao. (*Id.*) And at least one proposal listed Lucy Liu, Defendant Sun's spouse, as a "senior chemist." (*Id.* ¶ 311.) But Lucy Liu does not have a degree in chemistry, and she ostensibly does not have the requisite qualifications to be considered a "senior chemist." (*Id.* ¶¶ 312–13.)

Regarding facilities, each proposal stated that Defendant Wavefront had a "unique high-sensitivity low-noise photodetector characterization laboratory" in Basking Ridge, New Jersey. (*Id.* ¶ 385.) But the address provided for the laboratory was Defendant Sun's residence, which is

purportedly not also a commercial laboratory. (*Id.* ¶¶ 386–88.)

Regarding payments for Defendants' laboratory membership, at least some of Defendants' proposals included direct costs for an annual membership at the Micro- and Nano-Fabrication Laboratory at the Princeton Institute for the Science and Technology of Materials ("PRISM"). (*Id.* ¶¶ 65, 81, 102, 121, 141, 159, 177, 191, 212, 233, 247, 258, 347.) But because some of Defendants' contracts spanned the same time periods, Defendants overstated their PRISM membership fees by approximately $187,750 across the seventeen proposals. (*Id.* ¶ 404.)

## II.    Procedural History

The Government filed the Complaint on April 24, 2020, alleging six counts: (1) Presenting False or Fraudulent Claims to the United States under the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(A) (Compl. ¶¶ 408–10); (2) Causing to Be Presented False or Fraudulent Claims to the United States under the FCA, 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(C) (Compl. ¶¶ 411–13); (3) Making or Using a False Record or Statement under the FCA, 31 U.S.C. § 3729(a)(1)(B) (Compl. ¶¶ 414–16); (4) common-law fraud (*id.* ¶¶ 417–22); (5) unjust enrichment (*id.* ¶¶ 423–25); and (6) payment by mistake (*id.* ¶¶ 426–28).

On June 29, 2020, Defendants filed a Motion to Dismiss for failure to state a claim. (ECF No. 13.) The Government filed an Opposition (ECF No. 15), and Defendants filed a Reply (ECF No. 18). Defendants' Motion to Dismiss is presently before the Court.

## LEGAL STANDARD

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United*

*States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 675). "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Third, 'whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). A complaint that does not demonstrate more than a "mere possibility of misconduct" must be dismissed. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

Allegations of fraud require more detailed pleading. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2004 n.6 (2016) (noting that Rule 9(b) of the Federal Rules of Civil Procedure applies to False Claims Act allegations). In the Third Circuit, a plaintiff's allegations under the FCA must be accompanied by "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 157–58 (3d Cir. 2014). "A plaintiff alleging fraud must therefore support its allegations with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (citation and internal quotations omitted). The FCA does not require plaintiffs to plead "the exact content of the false claims in question" to survive a motion to dismiss. *See*

*Foglia*, 754 F.3d at 156.

## DISCUSSION

## I.      Counts 1–3: False Claims Act

A.      *Elements*

The FCA holds liable any defendant that

(A)      knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval [to the United States];

(B)      knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim [to the United States]; [or]

(C)      conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G) . . . .

31 U.S.C. § 3729(a)(1). To state a prima facie claim under § 3729(a)(1)(A), a plaintiff must plead that "(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 175 (3d Cir. 2019) (citations and internal quotations omitted). To prove a claim under § 3729(a)(1)(B), a plaintiff must "show that the defendant made or used (or caused someone else to make or use) a false record in order to cause the false claim to be actually paid or approved." *United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 242 (3d Cir. 2004).[4] To establish a claim for conspiracy to commit violations of 31 U.S.C. §§ 3729(a)(1)(A) or (a)(1)(B), a plaintiff must

---

[4] Some cases cited by the Court refer to claims under 31 U.S.C. §§ 3729(a)(1)–(2). In 2009, Congress enacted the Fraud Enforcement and Recovery Act of 2009, which amended the False Claims Act and re-designated § 3729(a)(1) as § 3729(a)(1)(A), and § 3729(a)(2) as § 3729(a)(1)(B). *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 303 (3d Cir. 2011). Some cases cited by the Court refer to conspiracy claims under 31 U.S.C. § 3729(a)(3). Section 3729(a)(3) is the conspiracy provision in the pre-2009 version of the statute; § 3729(a)(1)(C) is the conspiracy provision in the current version of the statute.

demonstrate "(1) a conspiracy to get a false or fraudulent claim allowed or paid and (2) an act in furtherance of the conspiracy." *United States ex rel. Laporte v. Premier Educ. Grp., L.P.*, 2016 WL 2747195, at *19 (D.N.J. May 11, 2016) (quoting *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007)).

   B. *Theories of FCA Liability*

     1. <u>Factually False and Legally False Claims</u>

   Generally, "'[t]here are two categories of false claims' that may form the basis of an FCA [action]: (1) factually false claims; and (2) legally false claims." *See United States ex rel. Whatley v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016) (quoting *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 305 (3d Cir. 2011), *abrogated on other grounds by Escobar*, 136 S. Ct. at 2001–02). "A claim is factually false when the claimant misrepresents what goods or services that it provided to the Government." *Wilkins*, 659 F.3d at 305. "'[A] claim is legally false when the claimant knowingly falsely certifies that it has complied with' a material statute, regulation, or contractual provision." *Whatley*, 657 F. App'x at 94 (quoting *Wilkins*, 659 F.3d at 305). There are two kinds of legally false claims: express and implied. *Id.* As the Third Circuit has explained,

> Under the express false certification theory, [a claimant] is liable under the FCA for falsely certifying that it is in compliance with a material statute, regulation, or contractual provision. By contrast, implied false certification liability attaches when a claimant makes specific representations about the goods or services provided and the claimant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths.

*Id.* (citations and internal quotations omitted).

     2. <u>Fraudulent Inducement Theory</u>

   "Although the focus of the False Claims Act is on false 'claims,' courts have employed a

fraudulent inducement theory to establish liability under the Act for each claim submitted to the government under a contract which was procured by fraud, even in the absence of evidence that the claims were fraudulent in themselves." *United States ex rel. Thomas v. Siemens AG*, 593 F. App'x 139, 143 (3d Cir. 2014) (citing *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 542–44 (1943) (superseded by statute)); *see also United States v. Veneziale*, 268 F.2d 504, 505 (3d Cir. 1959)). To prevail on a fraudulent inducement theory under the FCA, a plaintiff must show that "(1) there was a knowingly false or fraudulent statement; (2) that the statement was material; and (3) that it caused the government to pay out money or to forfeit moneys due." *Thomas*, 593 F. App'x at 143 (citing *Schmidt*, 386 F.3d at 242). Under this theory, "each and every claim submitted under a contract . . . which was originally obtained by means of false statements or other corrupt or fraudulent conduct . . . constitutes a false claim." *In re Baycol Prods. Litig.*, 732 F.3d 869, 876 (8th Cir. 2013) (citing *United States ex rel. Bettis v. Odebrecht Contractors of Cal., Inc.*, 393 F.3d 1321, 1326 (D.C. Cir. 2005)); *see also Veridyne Corp. v. United States*, 758 F.3d 1371, 1379 (Fed. Cir. 2014); *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 468 (5th Cir. 2009) (involving fraudulent inducement of government contracts under the SBIR program). Accordingly, "claims for payment subsequently submitted under a contract initially induced by fraud do not have to be false or fraudulent in and of themselves to state a cause of action under the FCA." *Baycol*, 732 F.3d at 876.

C.       *Submission of False or Fraudulent Claims*

Defendants argue that the Complaint must be dismissed because it "fails to allege the submission of a false claim." (*See* Defs.' Br. at 10–11, ECF No. 13-3.) Specifically, Defendants assert that the Complaint "fails to allege that [Defendant] Wavefront ever submitted such a form or claim for *payment*, much less how the form or claim for payment was false." (*See id.* at 11

(emphasis added).) Defendants' argument fails at this juncture for two reasons. First, the Third Circuit "never ha[s] held that a plaintiff must identify a specific claim for payment at the *pleading stage* of the case to state a claim for relief." *Wilkins*, 659 F.3d at 308 (emphasis in original). Second, the Complaint references Defendant Wavefront's payment requests and the Government's remittance of payments. (*See* Compl. ¶ 355 (alleging that the Government remitted payments); *id.* ¶ 383 (alleging that Defendant Wavefront requested payment from government agencies); *id.* ¶ 409 (alleging that Defendants "presented to the United States for payment or approval false and fraudulent claims"); *id.* ¶ 418 (alleging that Defendants submitted claims for payment)).

Still, Defendants maintain that, because they made the alleged misrepresentations in *proposals*, the Complaint suggests that Defendants had a "mere opportunity" to submit payment requests for costs not incurred. (Defs.' Br. at 14.) The Complaint, however, explicitly states that Defendant Wavefront's misrepresentations "resulted in the United States . . . remitting payments." (Compl. ¶ 355; *see also id.* ¶¶ 383, 418.) Moreover, the Government appears to bring its case under a fraudulent inducement theory of FCA liability. (*See id.* ¶ 10; Opp'n at 15–17, ECF No. 15.) Therefore, if Defendants procured the contracts fraudulently, their subsequent payment requests under the contracts would not need to be false or fraudulent to be actionable.

Next, Defendants assert that the Government's fraudulent inducement theory fails because Defendants' statements were not "objectively false" when they were made. (Reply at 5–6, ECF No. 18.) The alleged misrepresentations, however, do not merely comprise estimates about costs or expected staffing needs. They comprise verifiable statements about Defendant Wavefront's past employees and ascertainable details about Defendant Wavefront's "unique high-sensitivity low-noise photodetector characterization laboratory" (Compl. ¶¶ 71, 91, 110,

129, 147, 165, 183, 385), if not demonstrably repetitive budgeting of PRISM membership fees,

(*see id.* ¶¶ 402–04). Therefore, Defendants' theory that the Complaint fails to allege submission

of a false claim is unavailing.

> D.     *Particularity*

Defendants maintain that Counts 1–3 must be dismissed because they fail to satisfy the

particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure. (Defs.' Br. at 11–

15, 24–25.) The Court disagrees. The Complaint explains in detail the alleged misrepresentations

that purportedly influenced the Government's awarding of contracts and remittance of payments

to Defendant Wavefront. In accordance with the Third Circuit's particularity standard, the

Government provides, at a minimum, the level of detail that one might expect to find in a

newspaper story.

The Complaint discloses *who* submitted the misrepresentations at issue. On behalf of

Defendant Wavefront, Defendants Sun and Yao collaborated on the content of the proposals, and

either Defendant Sun or Defendant Yao submitted or certified each proposal. (*Id.* ¶¶ 353–54.)

The Complaint explains *what* the misrepresentations were. The Government dedicates

over 200 paragraphs of the Complaint to describing each of Defendant Wavefront's seventeen

proposals. (*See id.* ¶¶ 51–352.) In those proposals, Defendants made alleged misrepresentations

regarding personnel, facilities, and PRISM payments. (*See id.* ¶¶ 353–407.)

The Complaint states *when* Defendants made the misrepresentations. The Government

provides the precise date each proposal was submitted. (*Id.* ¶¶ 51, 70, 90, 109, 128, 146, 164,

182, 200, 217, 238, 252, 263, 283, 305, 320, 337.)

The Complaint notes, to the extent relevant, *where* the misrepresentations occurred. In

each of Defendant Wavefront's proposals, Defendants listed Defendant Sun's address as the

11

address of the "unique high-sensitivity low-noise photodetector characterization laboratory." (*Id.* ¶¶ 385–88.)

And the Complaint discusses *how* the misrepresentations were submitted. The Government provides background information on the SBIR and STTR programs, including how businesses submit proposals (*id.* ¶¶ 27–29, 35–36, 40), and how government agencies typically make awards (*id.* ¶¶ 30–33, 38–39). Additionally, the Government presents detailed information about the misrepresentations in each proposal. (*See id.* ¶¶ 51–352.)

In conclusion, the Government has provided "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *See Foglia*, 754 F.3d at 157–58. The Government's allegations are sufficient under Rule 9(b) to "place[] the defendant[s] on notice of the precise misconduct with which [they are] charged." *See Bookwalter*, 946 F.3d at 176.

E.     *Materiality*

1.     *Escobar*'s Materiality Standard

In *Escobar*, the United States Supreme Court set forth the materiality standard for FCA claims under the implied false certification theory of liability. 136 S. Ct. at 2002–04. Under that theory, a plaintiff must demonstrate that "a misrepresentation about compliance with a statutory, regulatory, or contractual requirement [is] material to the Government's payment decision." *See id.* at 2002. The Court in *Escobar* explained that, "[u]nder any understanding of the concept, materiality 'look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation.'" *Id.* (citation omitted). Section 3729(b)(4) of the FCA defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

12

This materiality standard is "demanding"; materiality "cannot be found where noncompliance is minor or insubstantial." *Id.* at 2003. Nor is a misrepresentation material "merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Id.* "[T]he Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive." *Id.* Moreover, it is insufficient that the Government "would have the option to decline to pay if it knew of the defendant's noncompliance." *Id.*

> *Escobar* provided the following additional guidance regarding materiality:
>
> [P]roof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement. Conversely, if the Government pays a particular claim despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. Or, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.

*Id.* at 2003–04.

## 2.   Materiality and the Fraudulent Inducement Theory

False or fraudulent statements must also be material under the FCA's fraudulent inducement theory of liability. *Thomas*, 593 F. App'x at 143.

Some of *Escobar*'s principles of materiality, applied in that case to the implied false certification theory, seem to apply with equal force to the fraudulent inducement theory. For example, the principle that "minor or insubstantial" false or fraudulent statements are not material could reasonably apply across different theories of FCA liability. Likewise, past government actions in response to similar false or fraudulent statements could reasonably inform materiality under the various FCA theories.

*Escobar*'s references to noncompliance with statutory, regulatory, or contractual requirements, however, do not apply as logically to the Government's fraudulent inducement theory. Noncompliance with such requirements is the essence of the implied false certification theory of FCA liability. *See Escobar*, 136 S. Ct. at 2001. But under the fraudulent inducement theory, courts have based FCA liability on false statements, not otherwise in contravention of any express "requirement," that amount to fraudulent inducement of a contract.

For example, in *Longhi*, the Fifth Circuit held that the defendants violated the FCA under the fraudulent inducement theory. 575 F.3d at 472. The court reasoned that the defendants submitted false statements in SBIR proposals regarding the company-defendant's incorporation date, facilities, and "arrangement" with two laboratories. *Id.* at 471. The court added that the defendants failed to disclose receipt of Ballistic Missile Defense Office contracts when applying for Air Force contracts. *Id.* These false statements constituted an FCA violation in part because they "left the [government] with the impression that [the company-defendant] was a much more established and experienced company than it actually was." *Id.* The court recognized that the false statements regarding the "arrangement" with the laboratories would have been sufficient on its own to establish FCA liability. *Id.* The court's holding did not hinge on the defendants' violation of a statutory, regulatory, or contractual requirement. *See id.*

The differences between the implied false certification theory and the fraudulent inducement theory belie Defendants' argument that the Government's failure to allege violations of statutory, regulatory, or contractual requirements warrants dismissal. (*See* Reply at 7–8.) The Court proceeds to assess the materiality of Defendants' alleged misrepresentations.

      3.    <u>Application</u>

The Court concludes that the Government has satisfied the FCA's materiality

requirement for the purposes of pleading. The Government's evaluation of each proposal considered the qualifications and experience of the listed Key Personnel. (Compl. ¶ 357.) The Government relied upon the proposals' statements regarding Ting Li; her inclusion apparently enhanced the proposals' evaluation scores. (*Id.* ¶¶ 358–59.) The Complaint expressly states, "Had the government personnel been aware of [Defendant] Wavefront's misrepresentations regarding its personnel and the labor performed on its projects, [Defendant] Wavefront would not have been awarded the contracts, and/or would not have been paid under the contracts." (*Id.* ¶ 384.)

The Government considers businesses' facilities and equipment when evaluating proposals. (*Id.* ¶ 390.) The listed address for Defendant Wavefront's "unique high-sensitivity low-noise photodetector characterization laboratory" was Defendant Sun's residence, not a commercial laboratory. (*Id.* ¶¶ 385–88.) The Complaint expressly states that, if the Government had known this fact, in addition to other details about Defendant Wavefront's facilities, it likely would not have awarded the contracts to Defendant Wavefront. (*Id.* ¶ 398.)

The Government relied on Defendants' overstatements of PRISM membership fees in awarding each of the contracts. (*Id.* ¶ 405.) Almost all of Defendant Wavefront's contracts closely matched its cost proposals. (*Id.* ¶ 406.) The Complaint expressly states that, had the Government known about these overstatements, it would not have awarded the contracts, or at least would have "reduced the amount of the award by the overbilling for the PRISM membership fees." (*Id.* ¶ 407.)

These allegations suggest with sufficient particularity that Defendant Wavefront's misrepresentations plausibly had a "natural tendency to influence, or [were] capable of influencing," the Government's awards of contracts and remittance of payments. *See* 31 U.S.C. §

15

3729(b)(4); *United States ex rel. Lemon v. Nurses To Go, Inc.*, 924 F.3d 155, 162 (5th Cir. 2019) (concluding under the court's materiality inquiry that the relators "raised a reasonable inference that the Government would [have] den[ied] payment if it knew about [the defendants'] alleged violations"); *cf. Escobar*, 136 S. Ct. at 2003 (explaining that, "if the Government pays a particular claim . . . despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material"); *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 490 (3d Cir. 2017) (concluding that false claims were not material in part because the government would not "have acted differently had [the defendant] told the truth," and "there [were] no factual allegations showing that the [Centers for Medicare and Medicaid Services] would not have reimbursed the[] claims had the[] [alleged reporting] deficiencies been cured"). The Complaint raises a reasonable inference that Defendants' false statements were not "minor or insubstantial." *See Escobar*, 136 S. Ct. at 2003. On the contrary, it is plausible that the false statements were consequential in the Government's decisions to award the contracts and render subsequent payments.

At the pleading stage, it is not necessary for the Government to plead information about past government actions in response to similar misrepresentations. *See United States ex rel. Streck v. Bristol-Myers Squibb Co.*, 2018 WL 6300578, at *16–17 (E.D. Pa. Nov. 29, 2018) (citing *United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 892 F.3d 822, 834 (6th Cir. 2018)). Information about past rejections of SBIR or STTR proposals based on similar false or fraudulent statements would be relevant to the Court's materiality inquiry. *See Escobar*, 136 S. Ct. at 2003. But the Government's failure to plead such information is not dispositive. Based on the Court's other considerations regarding materiality, the Court concludes that the

16

Government has satisfied the FCA's materiality requirement at the motion-to-dismiss stage.[5]

      F.    *Knowledge*

To establish a FCA violation, a plaintiff must prove that the defendant acted "knowingly." 31 U.S.C. §§ 3729(a)(1)(A)–(B). "Knowingly" means that a defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." § 3729(b)(1)(A). The False Claims Act does not require proof of specific intent to defraud. § 3729(b)(1)(B). Under Rule 9(b) of the Federal Rules of Civil Procedure, "knowledge . . . and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "But 'generally' is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake." *Iqbal*, 556 U.S. at 686. Plaintiffs "still must plead the factual basis which gives rise to a strong inference of fraudulent intent." *United States v. Strock*, 982 F.3d 51, 66 (2d Cir. 2020) (citation and internal quotations omitted). "The requisite strong inference of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (citation omitted).

The section of the Complaint describing the causes of action states, albeit in a general manner, that Defendants "knowingly" made misrepresentations in their proposals. (Compl. ¶ 409 (alleging that Defendants "presented to the United States for payment or approval false and fraudulent claims, with knowledge that they were false, and/or with deliberate ignorance of their

---

[5] Defendants contend that Count 3 should be dismissed because the Government has failed to allege a "causal connection" between the creation or use of a "false record" and "a false claim [being] paid or approved." (Defs.' Br. at 14 n.4, ECF No. 13-3.) The same facts that support the Court's conclusion regarding materiality controvert Defendants' argument regarding Count 3.

truth or falsity, and/or with reckless disregard for their truth or falsity"); *see also id.* ¶ 412 (alleging that Defendants "knowingly, or with deliberate ignorance or in reckless disregard for the truth conspired to submit or cause to be submitted, a false claim, or conspired to make, use or cause to be made or used false records and statements material to false and fraudulent claims that were made to the United States"); *id.* ¶ 415 (alleging that Defendants "knowingly, or with deliberate ignorance or in reckless disregard for the truth, made, used or caused to be made and used, false records and statements material to false and fraudulent claims"); *id.* ¶ 418 (alleging that Defendants "made material misrepresentations of fact, with knowledge of, or in reckless disregard of, their truth").)

Some facts in the Complaint either explicitly state or support reasonable inferences that Defendants were aware of the falsity of certain representations. The Complaint explicitly states that "Defendants knew when they proposed Ting Li as a Senior Optoelectronic Engineer and Key Personnel . . . that Ting Li was not going to be working on the projects being proposed." (*Id.* ¶ 360.) Some of Defendant Wavefront's proposals indicated that the company averaged five employees over the previous twelve months, even though Defendants Sun and Yao were the only employees associated with Defendant Wavefront during that time and Defendants Sun and Yao prepared, submitted, and certified the company's proposals. (*Id.* ¶¶ 71, 91, 110, 129, 147, 165, 183, 353–54.) These facts support a reasonable inference that Defendants plausibly acted, at a minimum, in reckless disregard of the falsity of that information. And Defendants represented that they were operating a laboratory, but they listed Defendant Sun's address as the laboratory's address. (*Id.* ¶¶ 385–88.) The fact that Defendant Sun and Defendant Yao collaborated on the content of the proposals, seemingly in their professional capacities, supports a reasonable inference that Defendants plausibly possessed actual knowledge of their alleged

18

misrepresentation regarding the laboratory. (*See id.* ¶ 353.)

Defendants submit that the Government's allegations of scienter are insufficient for two reasons. First, Defendants argue that the Complaint does not allege that they "acted with knowledge *with respect to both the falsity and materiality of the falsehoods*." (Defs.' Br. at 19 (emphasis in original) (quoting *Smith v. Carolina Med. Ctr.*, 274 F. Supp. 3d 300, 310 (E.D. Pa. 2017)).) However, two of the Complaint's express statements regarding Defendants' knowledge, when read in the light most favorable to the Government, assert that Defendants had knowledge of the materiality of their misrepresentations. (*See* Compl. ¶¶ 412, 415.) More importantly, the factual details provided by the Government evince a plausible "motive and opportunity to commit fraud, or . . . conscious misbehavior or recklessness." *See Strock*, 982 F.3d at 66. Defendants stood to benefit from the SBIR and STTR contracts, and they had the opportunity to do so by submitting proposals.

Second, Defendants assert that the Government has not pleaded scienter with respect to specific misrepresentations. For example, the Government appears not to have alleged that, at the time Defendants anticipated their PRISM membership fees, they knew "(1) the proposal would be awarded; (2) when the proposal would be awarded; (3) when the contract's period of performance would be; and, critically, (4) that the contract's period of performance would overlap with another awarded proposal's period of performance." (Defs.' Br. at 19–20.) Moreover, the Government appears not to have alleged that Defendants knew that their laboratory could not be residentially zoned, or that the advisors and consultants listed in their proposals would not work on their projects. (*Id.* at 20.) Although greater factual insight into Defendants' states of mind with respect to these misrepresentations would be helpful to the Court in further scrutinizing the potential viability of the Government's claims, such detail is not

19

required now. Without the benefit of discovery, the Government cannot be expected to cite extensive facts demonstrating Defendants' knowledge of the falsity and materiality of each alleged misrepresentation in all of Defendants' proposals. The Court concludes that the Government has satisfied its obligation to plead scienter generally at this stage of the case.

> G.   *Count 2: Conspiracy to Present a False or Fraudulent Claim*

Where it applies, the intracorporate conspiracy doctrine stands for the proposition that "an entity cannot conspire with one who acts as its agent." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313–14 (3d Cir. 2003) (citation omitted). In the context of civil rights litigation under 42 U.S.C. § 1985, the Third Circuit has concluded that "a conspiracy may exist between a corporation and an officer if the officer is acting in a personal, as opposed to official, capacity." *Heffernan v. Hunter*, 189 F.3d 405, 412 (3d Cir. 1999) (citation and internal quotations omitted). Defendants argue that the intracorporate conspiracy doctrine precludes the Government's FCA conspiracy claim in Count 2. (Defs.' Br. at 20–22.)

District courts are divided on whether the intracorporate conspiracy doctrine applies to the FCA. *Compare United States ex rel. Lupo v. Quality Assurance Servs., Inc.*, 242 F. Supp. 3d 1020, 1027 (S.D. Cal. 2017) (concluding that the intracorporate conspiracy doctrine applies to FCA claims), *and United States ex rel. Ruhe v. Masimo Corp.*, 929 F. Supp. 2d 1033, 1037–38 (C.D. Cal. 2012) (same), *and United States ex rel. Fago v. M & T Mortg. Corp.*, 518 F. Supp. 2d 108, 117–18 (D.D.C. 2007) (same), *with United States ex rel. Harris v. Lockheed Martin Corp.*, 905 F. Supp. 2d 1343, 1354–55 (N.D. Ga. 2012) (concluding that the intracorporate conspiracy doctrine did not apply to the FCA claim in that case because the relator alleged conduct that would violate the FCA and 18 U.S.C. § 371; there is an exception to the doctrine for criminal conspiracies under 18 U.S.C. § 371; and the doctrine "cannot shield the same conspiracy,

alleging the same criminal wrongdoing, from civil liability" (quoting *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1034 (11th Cir. 2000)).

It appears that the Third Circuit has not determined whether the intracorporate conspiracy doctrine is applicable to the FCA. *United States v. Medco Health Sys., Inc.*, 2014 WL 4798637, at *12 (D.N.J. Sept. 26, 2014). But this Court, in an unpublished opinion, has suggested that the doctrine applies to FCA claims. *See id.* (concluding that the intracorporate conspiracy doctrine "ma[de] sense in the context of the FCA conspiracy claim alleged" because "any 'agreement' . . . [came] from a complete unity of interest under one corporate consciousness"). The Complaint does not allege or imply that Defendants Sun and Yao acted in their personal, as opposed to their professional, capacities. Rather, the Complaint suggests that Defendants Sun and Yao furthered Defendant Wavefront's purpose of obtaining government contracts to conduct research. (*See* Compl. ¶ 50.) Based on the Government's allegations, it appears that any agreement that may have existed between Defendants regarding the alleged conduct would have been made with "complete unity of interest under one corporate consciousness." *See Medco*, 2014 WL 4798637, at *12; *see also Pencheng Si v. Laogai Rsch. Found.*, 71 F. Supp. 3d 73, 89 (D.D.C. 2014) (explaining in a FCA case that, under the intracorporate conspiracy doctrine, an entity "cannot conspire with its employees, and its employees, when acting within the scope of their employment, cannot conspire among themselves"). Therefore, the Court concludes that the intracorporate conspiracy doctrine precludes Count 2 of the Complaint.[6]

---

[6] Defendants submit that the Government has not otherwise stated a conspiracy claim under Rule 9(b) or Rule 8(a). (Defs.' Br. at 22–23.) Because the Court concludes that the intracorporate conspiracy doctrine warrants dismissal of Count 2, the Court need not address this argument at this time.

## II.        Count 4: Common-Law Fraud

Under New Jersey law, the elements of common-law fraud are "(1) a material

misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of

its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the

other person; and (5) resulting damages." *Allstate N.J. Ins. Co. v. Lajara*, 117 A.3d 1221, 1231

(N.J. 2015) (citation omitted). The Court's analyses of the materiality and knowledge elements

of the Government's FCA claims apply to the Government's fraud claim. *See supra* Sections I.E,

I.F.

The parties disagree as to whether the Complaint sufficiently alleges damages under Rule

9(b). (*Compare* Defs.' Br. at 25–26, *with* Opp'n at 31.) The Court concludes that it does. The

Complaint avers that Defendants proposed direct labor costs of over $560,000 for an

optoelectronic engineer or engineer. (Compl. ¶ 373.) The Complaint adds that Defendants'

proposals overstated PRISM laboratory membership costs by a total of approximately $187,750.

(*Id.* ¶ 404.) The Government does not appear to state explicitly the total amount that Defendants

eventually received under the contracts. But, for each awarded contract, the Complaint discloses

Defendants' proposed total budget and/or the budget allocation approximating Defendants'

proposed budget. (*See id.* ¶¶ 67, 69, 83, 85, 104, 106, 123, 125, 143, 145, 161, 163, 179, 181,

193, 195, 214, 216, 235, 237, 249, 251, 260, 262, 281, 303, 318, 335, 350, 352.) These facts

plausibly suggest with adequate particularity that the Government suffered damages from

Defendants' alleged misrepresentations.

## III.       Count 5: Unjust Enrichment

In New Jersey, "[t]o prove a claim for unjust enrichment, a party must demonstrate that

the opposing party received a benefit and that retention of that benefit without payment would be

unjust." *Thieme v. Aucoin-Thieme*, 151 A.3d 545, 557 (N.J. 2016) (citation and internal quotations omitted). Unjust enrichment also "requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id.*

Defendants offer two separate arguments regarding Count 5: (1) the Government expected no remuneration from awarding the contracts, and (2) the unjust-enrichment claim "sounds in fraud and is therefore a tort-based theory of recovery barred by New Jersey law." (Defs.' Br. at 28–29.) Neither of these arguments warrant dismissal of Count 5.

Regarding Defendants' first argument, the Government did not expect Defendant Wavefront to provide traditional remuneration in the form of monetary payments. But the Fifth Circuit, when assessing damages in another FCA case involving SBIR contracts, explained,

> [T]he purpose of the SBIR grant program was to enable small businesses to . . . commercially market their products. The Government's benefit of the bargain was to award money to eligible deserving small businesses. The [Government's] intangible benefit of providing an "eligible deserving" business with the grants was lost as a result of the [d]efendants' fraud.

*Longhi*, 575 F.3d at 473. The Court finds this to be a compelling articulation of the Government's anticipated benefit in FCA cases involving SBIR and STTR contracts. If the Government's theories of liability prevail, the Government will not have received the benefit of its bargain: to award money to eligible, deserving small businesses under its SBIR and STTR programs. Because Defendants purportedly received payments for which the Government did not receive its expected benefit, the Court concludes that Defendants' first argument is unpersuasive.

In support of their second argument, Defendants cite four cases, three of which are products-liability cases, in which the plaintiffs did not plead the elements of unjust enrichment. *See McGuire v. BMW of N. Am., LLC*, 2014 WL 2566132, at *3 (D.N.J. June 6, 2014)

(explaining that the plaintiff failed to allege that "he did not receive the product he purchased or otherwise conferred a benefit on the [d]efendant under a quasi-contractual relationship with the expectation of remuneration"); *Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*, 2009 WL 4730187, at *7 (D.N.J. Dec. 3, 2009) (explaining that the plaintiff did not claim that "it failed to receive the printer for which it conferred a benefit on the [d]efendant"); *Nelson v. Xacta 3000 Inc.*, 2009 WL 4119176, at *7 (D.N.J. Nov. 24, 2009) (explaining that the plaintiff "had no expectation of remuneration from [the defendant] at the time she allegedly conferred a benefit . . . by purchasing the [product]"); *Cafaro v. HMC*, 2008 WL 4224805, at *7 (D.N.J. Sept. 8, 2008) (explaining that the plaintiffs did not allege that "they performed or otherwise conferred a benefit on [the defendant] under a quasi-contractual relationship with the expectation of remuneration"). In contrast to those cases, the Government in the present case allegedly did not receive its expected benefit by awarding the contracts and making payments to Defendant Wavefront. Therefore, Defendants' second argument does not merit dismissal of Count 5.

## IV.    Counts 5 and 6: Quasi-Contract Claims

Under New Jersey law, "[q]uasi-contract liability [should] not be imposed . . . if an express contract exists concerning the identical subject matter." *Shalita v. Twp. of Washington*, 636 A.2d 568, 571 (N.J. Sup. Ct. App. Div. 1994) (quoting *Suburban Transfer Serv. v. Beech Holdings, Inc.*, 716 F.2d 220, 226–27 (3d Cir. 1983)). Defendants contend that, "[b]ecause the Complaint pleads the existence of valid contracts, . . . its unjust enrichment and payment by mistake claims are barred." (Defs.' Br. at 27.) Defendants' argument relies on a disputed premise. The Government's case rests in part on the theory that the contracts awarded to Defendant Wavefront were procured by fraud. Moreover, there is no indication in the Complaint that the SBIR and STTR contracts expressly govern applicants' fraudulent procurement of

24

awards. The Government's quasi-contract claims are not precluded merely because this case involves several awarded contracts under a grant program.

## V.      Leave to Amend

The Government requests that the Court grant it leave to amend the Complaint to correct any deficiencies. (Opp'n at 34.) Rule 15(a)(2) of the Federal Rules of Civil Procedure allows amendment of the pleadings with the court's leave, which should be given freely "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). The Government is therefore granted leave to file an amended complaint within fourteen (14) days, if it wishes to do so, to cure the Complaint's deficiencies.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 13) is granted in part and denied in part. An appropriate Order will follow.


Date: <u>January 5, 2021</u>                              */s/ Anne E. Thompson*
                                                           ANNE E. THOMPSON, U.S.D.J.